UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID C. MCCARTY, et al., | : | Case No. 3:15-cv-247 |
| Plaintiffs, | : | Judge Thomas M. Rose |
| v. | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, et al., | : | |
| Defendants. | : | |

_____

ENTRY AND ORDER GRANTING MOTION FOR JUDGMENT ON THE
PLEADINGS (DOC. 12) OF DEFENDANT NATIONAL UNION FIRE
INSURANCE COMPANY OF PITTSBURGH, PA

_____

This case is before the Court on the Motion for Judgment on the Pleadings (Doc. 12) of

Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union")

pursuant to Fed. R. Civ. P. 12(c).  For the reasons discussed below, the Court **GRANTS** the

Motion for Judgment on the Pleadings.

## I. BACKGROUND

Plaintiffs David McCarty and Cynthia McCarty (the "McCartys") retained Plaintiff Miguel

Pedraza, Esq.,[1] ("Pedraza") as their attorney in a lawsuit brought by Gary R. Gorby & Associates,

LLC ("Gorby") in the Common Pleas Court for Clark County, Ohio.  (Doc. 4, ¶ 10-11.)   In the

lawsuit, filed on December 11, 2007, Gorby alleged that the McCartys breached a contract for the

purchase of an insurance agency.  *Gary R. Gorby & Assoc., L.L.C. v. McCarty*, 2011-Ohio-1983,

¶ 2 (Ct. App. 2nd District).   Pedraza represented to the McCartys that he had prepared an Answer

_____

[1] Pedraza was realigned as a Plaintiff in this action pursuant to the Court's November 23, 2015 Entry and Order.
(Doc. 11.)

and Counterclaim in response to Gorby's Complaint, but Pedraza had not done so.   (Doc. 4, ¶ 16.)

As a result, on February 22, 2010, the Common Pleas Court entered default judgment against the

McCartys and in favor of Gorby in the amount of $69,896.00 in actual damages, $65,000.00 in

punitive damages, and $21,363.79 in attorney fees, plus interest and costs.   (*Id.* at ¶ 17.)

On January 4, 2011, the McCartys filed a legal malpractice action against Pedraza in Clark

County Common Pleas Court for breach of his professional responsibilities in the Gorby lawsuit.

(*Id.* at ¶ 18.)   On January 27, 2015, the McCartys obtained a final judgment against Pedraza in the

legal malpractice action in the amount of $275,825.29.   (*Id.* at ¶ 29.)

On June 11, 2015, the McCartys filed the Complaint in this case in Clark County Common

Pleas Court.   (Doc. 1-1.)   The McCartys named as Defendants National Union, Administrators

for the Professions of Delaware, Inc. ("Administrators"), American International Group ("AIG"),

and Pedraza.   (*Id.*)   On July 9, 2015, Defendants National Union and Administrators removed the

case to this Court pursuant to 28 U.S.C. § 1332 (diversity jurisdiction).   (Doc. 1.)   On July 16,

2015, National Union and Administrators filed a motion to realign Pedraza, who had been named a

Defendant, as a Plaintiff.   (Doc. 5.)   On the same day, AIG filed a motion to dismiss for failure to

state a claim under Fed. R. Civ. P. 12(b)(6).   (Doc. 6.)   On July 31, 2015, the McCartys filed a

motion to remand the case to Clark County Common Pleas Court.   (Doc. 8.)   On November 23,

2015, the Court granted the motion to realign Pedraza as a Plaintiff, granted AIG's motion to

dismiss, and denied the McCartys' motion to remand.   (Doc. 11.)

The Complaint alleges that on February 1, 2010, Pedraza continued his legal malpractice

insurance with National Union through Administrators, which provided "marketing, underwriting,

billing, collections and/or data processing services to or for the benefit of National Union."   (Doc.

4, ¶ 4, 6, 8.)   Pedraza's insurance policy had a retroactive effective date of February 21, 1992 and

2

expiration date of February 21, 2011.   (*Id.* at ¶ 8.)

The McCartys allege that National Union and Administrators had "both actual and constructive notice" (*id.* at ¶ 21) of their claims against Pedraza based on the following facts:

- Plaintiffs filed the legal malpractice action against Pedraza on January 4, 2011 (*id*. at ¶ 18);

- The docket for the legal malpractice action was publicly available (*id.* at ¶ 19);

- National Union and Administrators "had access to and was [sic] able to review the docket of the Clark County Clerk of Courts" (*id*. at ¶ 20); and

- By letter dated December 8, 2011, the McCartys' counsel directly notified Administrators of their legal malpractice action (*id*. at ¶ 23, Ex. D).

The McCartys allege that National Union and Administrators have a duty to provide coverage for the judgment against Pedraza in the legal malpractice action, but have unlawfully refused to do so. (*Id.* at ¶ 26-27.)

On July 16, 2015, National Union filed an Answer (Doc. 7) to the Complaint; and on December 21, 2015, National Union filed the Motion for Judgment on the Pleadings (Doc. 12), which is now before the Court.  National Union argues that it is entitled to judgment on the pleadings because the legal malpractice action against Pedraza was not reported to National Union in accordance with the terms of Pedraza's insurance policy.   (*Id.* at 1.)

## II.     <u>STANDARD OF REVIEW</u>

When considering a Rule 12(c) motion for judgment on the pleadings, all well-pleaded allegations must be taken as true and construed most favorably toward the non-movant. *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003).   Although a court must accept well-pleaded allegations, it "need not accept as true legal conclusions or unwarranted factual inferences."   *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a complaint will not withstand a motion to dismiss if it offers only "naked assertion[s]" without "further factual enhancement." *Twombly*, 550 U.S. at 557.

The Supreme Court further held that the factual allegations in a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). In sum, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods*., 577 F.3d 625, 629 (6th Cir. 2009) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

### III.   ANALYSIS

National Union argues that Pedraza's insurance policy does not provide coverage for the judgment in the legal malpractice action because the McCarty's claim was not timely reported to National Union. National Union asserts that the policy's Insuring Agreement states that, in order for the policy to provide coverage, a "Claim" must be (1) made against Pedraza during the "Policy Period," and (2) reported to National Union between February 21, 2010 and April 22, 2011. (Doc. 12 at 3.) National Union does not dispute that the claim was made against Pedraza within the Policy Period, but argues that the claim was not reported to it until August 24, 2011, four months after the April 22, 2011 cut-off date for reporting claims. (*Id.* at 4.) As a result, argues

National Union, there is no coverage for the claim under Pedraza's policy and the claims against National Union should be dismissed.  (*Id.*)

In response, the McCartys argue that the Complaint's allegation that National Union had "both actual and constructive notice of Plaintiffs' claims against Pedraza when Plaintiffs filed the Legal Malpractice Action" (Doc. 4, ¶ 21) is sufficient to withstand dismissal at the pleadings stage. (Doc. 18 at 4-5.)  Importantly, the McCartys do not dispute National Union's construction of Pedraza's insurance policy.  Rather, the McCartys argue only that the Complaint's allegations state a claim under the insurance policy, even as constructed by National Union.

Neither party directly addresses which state's law applies to the insurance policy. National Union presumes that Ohio law applies, as it cites Ohio case law to support its interpretation of the insurance policy.  (Doc. 12.)   The McCartys do not oppose the application of Ohio law.   The insurance policy does not have a choice-of-law provision.   (Doc. 7-1.)

As the forum state, Ohio's choice-of-law provisions apply if a choice-of-law determination is necessary.  *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 n. 2 (6th Cir. 2000).   Ohio has adopted sections 187 and 188 of the Restatement (Second) of Conflict of Laws to govern choice of law in contract disputes.  *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206, 220 (2001).   Section 188 states that the "rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties."   Restatement (Second) of Conflict of Laws § 188(1) (1971).   Where the contract does not contain a choice-of-law provision, the contacts to be taken into account are:

> (a)    the place of contracting,
>
> (b)    the place of negotiation of the contract,

5

(c)     the place of performance,

(d)     the location of the subject matter of the contract, and

(e)     the domicile, residence, nationality, place of incorporation
        and place of business of the parties.

*Id*. at § 188(2).

Pedraza and National Union are the parties to the insurance policy.  (Doc. 7-1.)  Pedraza is an Ohio citizen, and National Union is a citizen of Pennsylvania (its state of incorporation) and New York (its principal place of business).  (Doc. 4, ¶ 1-2, 6; Doc. 1, ¶ 6.)  The place of contracting and place of negotiation are not disclosed in the pleadings.   The place of performance is Ohio (the location of Pedraza's law practice) and New York (National Union's principal place of business).   The location of the subject matter of the insurance policy is Ohio because Pedraza was licensed to practice law in Ohio and his practice was based in Springfield, Ohio.  (Doc. 4, ¶ 6.)  The location of Pedraza and his law practice carries significant weight because, given the nature of the policy, it is where the parties should have reasonably expected to have been drawn into court to resolve any claims against the policy.  Conversely, Pennsylvania and New York do not have nearly as strong a tie to the subject matter of the policy.  Accordingly, the Court concludes that Ohio law should govern the insurance policy, as the parties have presumed.

Under Ohio law, the interpretation of an insurance contract is a question of law to be decided by the court.  *Leber v. Smith*, 70 Ohio St.3d 548, 553, 639 N.E.2d 1159 (1994).  When a contract's language is clear and unambiguous, a court must enforce the contract as written and according to the plain and ordinary meaning of the words used.  *Cincinnati Indemn. Co. v. Martin*, 85 Ohio St.3d 604, 605, 607, 710 N.E.2d 677 (1999).

The relevant portion of Pedraza's insurance policy, which is attached as Exhibit 1 to

National Union's Answer, is the Insuring Agreement.   (Doc. 7-1.)   It states, in pertinent part:

## DECLARATIONS

\* \* \*

| 2 **POLICY PERIOD** | Inception   Date:   02/21/2010                    Expiration   Date:   02/21/2011 12:01 A.M. at the address stated in Item 1 above. |
|---|---|

\* \* \*

1.    **INSURING AGREEMENT**

    (a)    **Coverage**

        (1)    **Coverage for Loss**

This policy will pay on the behalf of the **Insured** any **Loss** arising from a **Claim** first made against the **Insured** during the **Policy Period** or, if applicable, the **Extended Reporting Period** and reported to the **Insurer** pursuant to the terms of this policy for any **Wrongful Act** committed or omitted by an **Insured**, on or after the **Retroactive Date**, whenever or wherever such **Wrongful Act** has been committed by the **Insured** in the rendering or failing to render **Legal Services** for others.

\* \* \*

4.    **CONDITIONS**

\* \* \*

    (f)    **Notice of Claim and Claim Reporting Procedures**

    (1)    Notice hereunder shall be given in writing to the addressee and at the address identified in Item 7 of the Declarations. Notice shall include and reference this policy number as indicated in the Declarations. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice.

7

(2)      For all coverage under this policy:

          (i)      before coverage will apply, notice in writing of a **Claim** made against an **Insured** must be given to the **Insurer** as soon as practicable after notice of such **Claim** is reported to the **Insured**, but in all events no later than either:

                    (A)      sixty (60) days after the end of the **Policy Period**; or

                    (B)      the end of any applicable **Extended Reporting Period**.

(Doc. 7-1.)   The Insuring Agreement's language is clear and unambiguous.   In order for there to be coverage for a claim, the claim must be made during the Policy Period *and* reported to National Union pursuant to the policy's notice provisions.   The notice provisions state that written notice of a claim must be given to National Union "as soon as practicable," but "no later" than either 60 days after the end of the Policy Period or the end of any applicable Extended Reporting Period. Sixty days after the end of the Policy Period was 60 days after February 21, 2011, or April 22, 2011.   National Union asserts that there is no applicable Extended Reporting Period, and the McCartys do not dispute that assertion.   (Doc. 13.)   Thus, in order for the claim against Pedraza's policy to be covered, it must have been reported, in writing, to National Union by no later than April 22, 2011.   In sum, National Union's interpretation of the policy is correct.

The Complaint's allegation that National Union "had both actual and constructive notice" of the McCartys' claim against Pedraza when they filed their legal malpractice action is a legal conclusion that the Court is not obliged to accept on a Rule 12(c) motion.   *Church's Fried Chicken*, 829 F.2d at 12.   This legal conclusion is based on the argument—also alleged in the Complaint—that National Union had notice of the legal malpractice action because the Clark

County Clerk's docket is publicly available.   Thus, the McCartys argue that National Union had

an obligation to continuously review the dockets of Ohio courts to determine if there were any

claims against Pedraza.   The McCartys do not cite to any provision of Pedraza's policy that

imposes such an obligation on National Union.   To the contrary, the policy unambiguously states

that notice of a claim "shall be given in writing to the addressee and at the address identified in

Item 7 of the Declarations."   Requiring that written notice be sent to National Union at its address

is inconsistent with an interpretation of the policy that would require National Union to search for

claims against its insured.   The Court rejects the McCartys' argument that National Union had

actual and constructive notice of their legal malpractice action merely by virtue of its filing in a

publicly available docket.   *See Harwell v. State Farm Mutual Auto Ins. Co.*, 896 S.W.2d 170, 174

(Tex. 1995); *KPFF, Inc. v. California Union Ins. Co.*, 56 Cal.App.4th 963, 977, 66 Cal.Rptr.2d 36,

45 (1st Dist. 1997).

The McCartys also allege that they personally sent notice of the legal malpractice action to

National Union by letter dated December 8, 2011.   (Doc. 4, ¶ 23; Doc. 1-1, Ex. D.)   National

Union asserts in its Answer that it first received notice of the legal malpractice action on August

24, 2011.   (Doc. 7, ¶ 58.)   Whether National Union received notice of the McCarty's claim on

December 8, 2011 or August 24, 2011, it was not timely under the terms of Pedraza's policy.   As

a result, National Union is not liable under Pedraza's policy for the McCarty's judgment against

him in the legal malpractice action.   *See U.S. v. A.C. Strip*, 868 F.2d 181, 187 (6th Cir. 1989);

*Elkins v. American Int'l Spec. Lines Ins. Co.*, 611 F.Supp.2d 752, 762 (S.D. Ohio 2009); *Hedmond

v. Admiral Ins. Co.*, 2003 WL 21791589, at *4 (Ohio App. 10th Dist. Aug. 5, 2003).

IV.    **CONCLUSION**

For the reasons stated above, the Court **GRANTS** National Union's Motion for Judgment

on the Pleadings (Doc. 12).   The claims against National Union are **DISMISSED**.

**DONE** and **ORDERED** in Dayton, Ohio, this Thursday, March 24, 2016.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE